IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MICHAEL MOSS and MARYANN MOSS, on behalf of themselves and on behalf of JENNIFER MOSS<br><br>    Plaintiffs,<br> v.<br><br>LA ENTRADA AT RANCHO VIEJO COMMUNITY ASSOCIATION, INC.<br><br>    Defendant. | Case No. 1:13-cv-1081<br><br>**JURY DEMAND** |

## COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

### NATURE OF ACTION

1. Plaintiffs Michael Moss and Mary Ann Moss bring this action on behalf of themselves and on behalf of their daughter Jennifer Moss under the federal Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, to redress injuries they have suffered and continue to suffer as a result of Defendant La Entrada at Rancho Viejo Community Association, Inc.'s ("Association") actions and inactions related to Jennifer Moss's access to the home in the La Entrada at Rancho Viejo community.

2. Michael and Mary Ann Moss own the home at 93 Via Orilla Dorado in La Entrada at Rancho Viejo. Their daughter, Jennifer Moss, is wheelchair dependent for mobility due to cerebral palsy. For years, the sidewalk running in front of the Mosses home had no curb cuts and Jennifer Moss had to be pushed off the curb and into the street if she wanted to travel from her home. In addition, the Mosses' immediate neighbors to the east, Kenneth and Eunice

Vellon, have made it a regular practice to park their cars in their driveway, which completely blocks the sidewalk along Via Orilla Dorado.

3. The Association maintains and enforces rules, regulations, and covenants and provides services for the La Entrada at Rancho Viejo community. The Association has the authority to preclude or take enforcement action against activities that violate local or state laws, including the state law that prohibits parking vehicles on sidewalks, but has taken no effective action to prevent the Vellons from blocking the sidewalk. In fact, the Association has given the Vellons permission to park their vehicles on the sidewalk. In addition, for many years, the Association failed to ensure that curb cuts were installed on the north side of Via Orilla Dorado.

4. The Association has denied the Mosses' requests for a reasonable accommodation that would allow Jennifer Moss to travel along the sidewalk to the east of her home, including to the bus stop, the community mailboxes, and to the public open space in the community.

5. By its actions, the Association has injured Jennifer Moss through its denial of her rights under the Fair Housing Act and Americans with Disabilities Act and has further injured Michael and Mary Ann Moss because of their association with their daughter.

6. On the basis of the violations asserted herein, the Mosses seek compensatory and punitive damages, a declaratory judgment, and an injunction directing the Association to desist from and remedy its discriminatory conduct.

**PARTIES**

7. Jennifer Moss is wheelchair dependent for mobility and as such has a disability as defined under the Fair Housing Act and Americans with Disabilities Act. Ms. Moss has cerebral palsy, which substantially limits her ability to walk – a major life activity. Ms. Moss regularly stays at the home at 93 Via Orilla Dorado, Santa Fe, New Mexico.

8. Michael and Mary Ann Moss are the parents and legal guardians of Jennifer Moss.  The Mosses own the home at 93 Via Orilla Dorado.  The Mosses regularly live with their daughter at the home at 93 Via Orilla Dorado.  The Mosses regularly push Ms. Moss in her wheelchair from her home to various locations in the surrounding community.

9. La Entrada at Rancho Viejo Community Association, Inc., is an active corporation incorporated under the laws of New Mexico with its principal place of business at 9798 Coors Blvd, Building A, Albuquerque, New Mexico.  The Association is a duly organized homeowners association under the laws of New Mexico.  Under the La Entrada at Rancho Viejo charter, the Association maintains rules, regulations, and covenants for the community.  The Association operates and maintains a variety of public common areas in the community, including the public walkways, small parks/open spaces, and community mailbox.  At all times relevant to this complaint, the Association retained and exercised the authority to enforce the Association Rules and Community Charter.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the District of New Mexico.

## FACTUAL BACKGROUND

I. **The Mosses' Home in La Entrada**

12. In the summer of 2009, Michael and Mary Ann Moss signed a contract for the construction of a house at 93 Via Orilla Dorado.  The Mosses closed on the completed home in January 2010 and moved in the next month.

13. The Mosses, who also own a home in Colorado, stay approximately a quarter to half of their time in the home at 93 Via Orilla Dorado, depending on the season and the activities occurring in Santa Fe that would interest and involve their daughter. When the Mosses purchased the house at 93 Via Orilla Dorado, they planned to permanently relocate there as soon as practicable. However, concern for their daughter's safety and mobility within her community, in light of the discriminatory barriers at La Entrada, have prevented them from moving to their Santa Fe home. The Mosses would move to their home in Santa Fe if Jennifer Moss could access the home safely.

14. On a typical day at 93 Via Orilla Dorado, Jennifer Moss, with assistance from her parents or a caregiver, will engage in a variety of activities outside the home that require travelling to the bus stop, the community mailbox, her uncle's home, and other common and public areas of the community.

## II. The Lack of Access to the Mosses' Home

15. Until the summer of 2013, there were no curb cuts in the sidewalk on the north side of Via Orilla Dorado where the Mosses' home is located. To access any area of the community (other than the short length of sidewalk to the west of her home that leads to an undeveloped area) by any means other than a vehicle, Ms. Moss would have to negotiate the dangerous maneuver of taking her wheelchair off the curb and be pushed up the road until she could reach a curb cut on the south side of Via Orilla Dorado. She could then get back on the sidewalk and travel to her destination.

16. Ms. Moss must be pushed up the street because throughout the Mosses' tenure on Via Orilla Dorado, the owners of the home adjacent to the Mosses to the east—Kenneth and Eunice Vellon—have parked their vehicles in their driveway in front of their garage. When

parked in their driveway, the Vellons' cars completely obstruct the sidewalk on the north side of Via Orilla Dorado:



17.     The Association provided the Vellons permission to park their vehicles on the sidewalk.  Upon information and belief, the Association took this action because it did not want to make an exception to its rule that homeowners in the community cannot park on the street.

18.     In the summer of 2013, after years of requests by the Mosses, the Association installed curb cuts at two points along the north side of Via Orilla Dorado.  The curb cut to the east of the Mosses' home remains inaccessible to Ms. Moss because the Vellons' vehicles block the sidewalk that must be traversed in order to reach that curb cut.  The curb cut to the west of the Mosses' home leads to a mostly undeveloped area with a non-completed sidewalk where there are no services or common or public areas.

19. To the east of the Mosses home there are hiking and biking trails that were marketed by the Association and influenced the Mosses' decision to purchase the home. There are paths and open spaces owned, operated and/or under the control of the Association that Jennifer Moss would use more frequently if she could access them without having to take her wheelchair off the curb.

20. Michael and Mary Ann Moss informed Association representatives on numerous occasions that Jennifer Moss is wheelchair dependent due to her cerebral palsy and that the absence of curb cuts and the Vellons' cars obstructed Ms. Moss's access to and from her home.

21. As early as the summer of 2011, an Association Board Member acknowledged in a conversation with Mrs. Moss that vehicles parked in the driveway of 95 Via Orilla Dorado would block Ms. Moss' access.

### III.   Lack of Access to Parks and Open Spaces Owned By Defendants

22. The open spaces and small parks owned and operated by the Association are open indiscriminately to use by members of the public. Members of the public who are not constrained by disability regularly use these places for various purposes.

23. The Vellons' vehicles obstruct wheelchair access to the parks and open spaces. The Association has not taken any effective action to remove those obstacles and allow Ms. Moss equal and safe access to the parks.

### IV.   The Mosses' Attempts to Seek Accommodation from Association to Allow Ms. Moss Access to Her Home

24. In August 2011, Mr. Moss made a request to Rexford Ross, a representative of the developer and member of the Association Board, to have curb cuts installed on the north side of Via Orilla Dorado. Mr. Moss also stated to Mr. Ross that the vehicles consistently parked in the driveway of 95 Via Orilla Dorado blocked Ms. Moss' access along the sidewalk and further

6

prevented her (in addition to the difficulties created by the absence of curb cuts) from accessing the common areas of the complex, the bus stop serving the neighborhood, and other areas she would otherwise have frequented.  Mr. Ross informed Mr. Moss that he would investigate the issue.

25. At the November 2011 Association Board meeting, Mr. Moss spoke again to Mr. Ross regarding the curb cuts.  Mr. Ross responded that the concrete pouring season was over and that the Association would ensure that cuts were installed at the first opportunity during the following season.

26. In December 2011, Mr. Moss reminded Mr. Ross, and the then-current Association Board Members that the absence of curb cuts was interfering with Ms. Moss's use and enjoyment of the family's home.

27. In March 2012, an Association Board Member confirmed that the Association had granted a "variance" to the owners of 95 Via Orilla Dorado to park their cars in their driveway, which would necessarily block the sidewalk.

28. In November 2012, Mr. Moss informed newly elected Association Board Member Cass Thompson regarding the effect of the Vellons' parked cars on Ms. Moss's ability to leave her home.  Mr. Moss also described to Mr. Thompson the ongoing effect of the absence of curb cuts.  Mr. Moss asked that both obstacles be remediated.  Mr. Thompson indicated that he would check into the issue.

29. On December 3, 2012, Mr. Moss contacted Association Board Member Thompson to determine the status of resolving the lack of access for Ms. Moss.  Mr. Thompson replied that he still had to confer with others before providing any response.

30. On December 22, 2012, Mr. Moss again contacted Association Board Member Thompson to determine the status of resolving the access issues. Mr. Thompson responded "I'll let you know."

31. On January 13, 2013, Mr. Moss wrote to the Association Board and Association Manager reiterating the need for curb cuts and a clear path of access along the sidewalk that was continuously blocked by the Vellons' vehicles.

32. On January 16, 2013, Mr. Moss asked Association Board Members Cass Thompson and Pat Barnes to resolve the access issues. They responded that they would confer and get back to him.

33. On January 17, 2013, Mr. Moss re-sent his January 13, 2013 correspondence asking for a resolution to the access issues to all members of the newly elected Association Board.

34. During the early Spring of 2013, Mr. Moss exchanged several emails and had several conversations with Board Member Barnes regarding the access issues but the Board took no action.

35. On March 26, 2013, Mr. Moss re-sent his January 17, 2013 correspondence asking for a resolution to the access issues to Association Manager John Holt. Mr. Holt stated to Mr. Moss that he understood that the Board had granted a variance to the Vellons to allow them to park their car in their driveway, which would necessarily block the sidewalk.

36. In May 2013, Association Manager Holt stated that the Board would write a letter to the Vellons. The Board did not inform the Mosses of the content of the letter.

37. If the Board sent a letter to the Vellons regarding their blocking the sidewalk with their cars, it did not change the Vellons' parking practice, as both of their vehicles continued to be parked in the driveway, blocking the sidewalk.

38. On July 3, 2013, Board Members Barnes and Thomas discussed Ms. Moss's access issues with the Mosses, but no satisfactory resolution was reached.

39. On August 19, 2013, the Mosses' legal counsel contacted the Association by letter and again articulated the access obstacles created for Jennifer Moss by the vehicles parked in the 95 Via Orilla Dorado driveway and the absence of curb cuts.  The letter identified the Association's authority to enforce state laws, the state law that prohibits the parking of vehicles on sidewalks, and the remedies available to the Association.  The letter specifically requested a reasonable accommodation from any practice or policy that prevented the Association from taking action to remove the vehicles parked on the sidewalk.

40. On August 28, 2013, counsel for the Association responded by noting that the Association had forwarded the Mosses' counsel's letter to the Vellons and suggesting that it would take no further action.

41. On September 3, 2013, counsel for the Mosses informed counsel for the Association that it had not taken any effective action to ensure Ms. Moss's access along the sidewalk running in front of her house and that the Vellons' cars continued to block the sidewalk.

42. The Association did not respond to the September 3, 2013 correspondence.

43. As of the date of the filing of this complaint, the Vellons continue their practice of blocking the sidewalk.

**V.     The Association's Authority and Actions**

44.     Under its charter, Defendant retains and exercises the authority to enforce Association rules and local and state laws.

45.     State law prohibits stopping, standing, or parking a vehicle on a sidewalk. N.M.S.A. § 66-7-351.

46.     Defendant's governance of the Association is a term, condition, and privilege of the purchase of homes, including Plaintiffs' purchase of the home at 93 Via Orilla Dorado, in La Entrada at Rancho Viejo.

47.     Defendant's enforcement and authority to enforce Association rules and local and state laws is a service within the meaning of 42 U.S.C. § 3604(f)(2).

48.     Defendant owns and operates parks and/or open spaces that are places of public accommodation within the meaning of 42 U.S.C. § 12181.

49.     Federal law imposes on Defendant a duty to maintain access to the parks and open spaces in operable working condition, including the duty to keep access to those places clear of obstacles where their removal would be readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.211(a).

50.     Plaintiffs' numerous requests that the Association exercise its authority to require the Vellons to move their cars and/or to revoke the permission given the Vellons to park on the sidewalk constitute requests for accommodations.  The Association refused to grant the accommodations.  The requested accommodations were reasonable and are explicitly contemplated and authorized by the Association's own rules.  Requiring the Vellons to move their vehicles would not impose any undue financial or administrative burden on the Association or alter the nature of the Association's operation.

51. Through the actions of its Board Members, officers, and/or representatives as described above, the Association acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for Plaintiffs' federally-protected rights.

## INJURY TO PLAINTIFFS

52. As a direct and proximate result of the Association's actions, policies and practices, Plaintiffs have suffered, and in the future will continue to suffer humiliation, embarrassment, and mental and emotional distress.

53. The Mosses have constant anxiety about Jennifer's safety and the safety of anyone who has to attend to her in any outdoor activity around their home. When Jennifer wants or needs to leave the home to engage in any activity in the community or to take public transportation, it creates stress and concern for the Mosses because she is forced to go over a curb and be pushed in the street.

54. The absence of accessible routes from the home has prevented and continues to prevent Ms. Moss from obtaining a housing opportunity that is accessible to people without disabilities.

55. The absence of accessible routes from the home has prevented and continues to prevent the Mosses from purchasing an electric scooter that Ms. Moss could operate on her own. The risk of Ms. Moss injuring herself trying to drive off the curb is too great for the Mosses to get the scooter.

56. The absence of safe access to the parks and open space operated by Defendant has prevented and continues to prevent Ms. Moss from enjoying recreation opportunities available to other members of the public.

57. The continued lack of access for Jennifer Moss along the Via Orilla Dorado sidewalk and Defendant's refusal to ameliorate that lack of access have prevented Plaintiffs from moving permanently to Santa Fe and their home at 93 Via Orilla Dorado.

### FIRST CLAIM FOR RELIEF
### (Violation of the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*)

58. Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 57 above.

59. The actions of Defendant as described herein make housing unavailable to Plaintiffs on the basis of Jennifer Moss' disability in violation of 42 U.S.C. § 3604(f)(1).

60. The actions of Defendant as described herein constitute discrimination in the terms, conditions, and/or privileges of Plaintiffs' dwelling and/or in the provision of services or facilities in connection with Plaintiffs' dwelling on the basis of Jennifer Moss' disability in violation of 42 U.S.C. § 3604(f)(2).

61. The actions of Defendant as described herein constitute discrimination by a refusal to make reasonable accommodations in rules, policies, and/or practices, which are necessary to afford Jennifer Moss equal opportunity to use and enjoy the Mosses' home at 93 Via Orilla Dorado. These actions violate 42 U.S.C. § 3604(f)(3)(B).

### SECOND CLAIM FOR RELIEF
### (Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*)

62. Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 61 above.

63. The actions of Defendant as described herein constitute discrimination by a refusal to make reasonable modifications to afford services, facilities, privileges, advantages, or accommodations to Jennifer Moss in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

64. The actions of Defendant as described herein constitute discrimination by a refusal to remove architectural barriers in existing facilities where such removal is readily achievable and a failure to maintain access to places of public accommodation in operable working condition. These actions violate 42 U.S.C. § 12182(b)(2)(A)(iv) and 28 C.F.R.§ 36.211.

## PRAYER FOR RELIEF

65. Plaintiffs pray that this Court grant the following relief:

   i. enter a declaratory judgment finding that the foregoing actions of Defendant violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*;

   ii. enter a permanent injunction directing Defendant and its Board Members, employees, and representatives to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

   iii. award compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiffs for the humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendant alleged herein;

   iv. award punitive damages to the Plaintiffs in an amount to be determined by the jury that would punish Defendant for its willful, wanton, and reckless conduct alleged herein and that would effectively deter Defendant from engaging in similar conduct in the future;

   v. award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 3613(c)(2) and 12205;

   vi. order such other relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

66. Plaintiff requests trial by jury as to all issues in this case.

Dated: November 6, 2013

        Respectfully submitted,

        /s/ Reed Colfax
        REED N. COLFAX
        RELMAN, DANE, & COLFAX PLLC
        2009 Botulph Road
        Santa Fe, NM 87505
        Telephone: (505) 983-1601
        Facsimile: (505) 213-0575
        rcolfax@relmanlaw.com

        *Counsel for Plaintiffs*